IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

DELTON RICE                                                                                           PLAINTIFF

v.                               Case No. 1:21-cv-1033

FIDELITY FIDUCIARY COMPANY, LLC                                               DEFENDANT

## ORDER

Before the Court is Defendant's Motion to Compel Arbitration and Stay Proceedings. ECF No. 6. Plaintiff filed a response. ECF No. 8. Defendant has filed a reply. ECF No. 22. The Court finds the matter ripe for consideration.

### I. BACKGROUND

In 1992, Plaintiff, a Medicare beneficiary, sustained an injury while employed at Georgia-Pacific Corporation in Crossett, Arkansas. The injury was compensable under applicable workers' compensation laws, and Plaintiff settled his workers' compensation claim. He also entered into a Workers' Compensation Medicare Set-Aside Arrangement ("WCMSA"), which contractually allocated a portion of his workers' compensation settlement to a fund for all future work-injury-related medical expenses that are covered and otherwise reimbursable by Medicare. In 2007, as required, the WCMSA was approved by the Centers for Medicare and Medicaid Services. Defendant professionally administers the WCMSA.

In June 2021, Plaintiff filed this lawsuit in state court, and it was timely removed to this Court based on federal question jurisdiction in that the WCMSA is regulated by the Medicare Act. Plaintiff claims that Defendant breached the WCMSA by failing to disburse to Plaintiff funds being held in the Medicare set-aside account. Specifically, Plaintiff relies on paragraph 4.4 of the

WCMSA, which allows Plaintiff to request termination of the WCMSA and distribution of the remainder of the funds held in the account in the event his condition has substantially improved. Stated succinctly, Plaintiff alleges that Defendant breached Paragraph 4.4 of the WCMSA by refusing Plaintiff's request to terminate the WCMSA.

Paragraph 6.10 of the WCMSA includes the following arbitration provision:

> **Arbitration**.  Unless the relief sought requires the exercise of the equity powers of a court of competent jurisdiction, any dispute arising in connection with the interpretation or endorsement of the provisions of this Agreement, or the application or validity thereof, shall be submitted to arbitration.  Such arbitration proceeding shall be held in Little Rock, Arkansas or a mutually agreeable location, in accordance with the rules of the American Arbitration Association.  This agreement to arbitrate shall be specifically enforceable.  Any award rendered in any such arbitration proceedings shall be final and binding on each of the parties hereto, and judgment may be entered thereon in any court of competent jurisdiction.

ECF No. 6-1, ¶ 6.10.  Relying on this arbitration provision, Defendant[1] moves to compel arbitration of Plaintiff's claims under the Federal Arbitration Act ("FAA").  ECF No. 6.

## II. DISCUSSION

Pursuant to the FAA, a written arbitration provision in any contract evidencing a transaction involving interstate commerce "shall be valid, irrevocable, and enforceable save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  "A court must grant a motion to compel arbitration if a valid arbitration clause exists which encompasses the dispute between the parties."  *3M Co. v. Amtex Sec., Inc.*, 542 F.3d 1193, 1198

---

[1] The Court notes that Defendant is a nonsignatory to the WCMSA.  State contract law governs the ability of nonsignatories to enforce arbitration provisions. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630-31 (2009). The Eighth Circuit has recognized that, in limited circumstances, Arkansas law allows a nonsignatory to compel arbitration against the claims of a signatory through the doctrine of equitable estoppel.  *PRM Energy Sys., Inc. v. Primenergy, L.L.C.*, 592 F.3d 830, 834 n.3 (8th Cir. 2010).  When a signatory to a written agreement containing an arbitration clause must rely on the terms of that agreement in asserting claims against the nonsignatory, the signatory is estopped from denying the nonsignatory the benefit of the arbitration clause.  *See Am. Ins. Co. v. Cazort*, 316 Ark. 314, 871 S.W.2d 575, 579-80 (1994). ("In short, [plaintiff] cannot have it both ways.  It cannot rely on the contract when it works to its advantage and ignore it when it works to his disadvantage*.*").  Plaintiff does not dispute that Defendant, a nonsignatory to the WCMSA, can enforce the arbitration provision.

(8th Cir. 2008). Further, courts are guided by a "liberal federal policy favoring arbitration agreements." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991).

Here, Plaintiff does not dispute the validity of the arbitration provision or whether it encompasses the dispute at issue. Accordingly, upon review of the WCMSA's arbitration provision, the Court finds that the arbitration provision is valid. Further, the Court finds that the dispute at issue, whether Defendant breached paragraph 4.4 of the WCMSA, falls within the broad terms of the arbitration provision.

Instead of arguing against the validity and/or scope of the WCMSA's arbitration provision, Plaintiff argues that the FAA does not control because "the issue involves an Arkansas plaintiff, an Arkansas workers compensation payee, Georgia-Pacific Corporation, and an Arkansas Workers' Compensation," and thus "no 'interstate commerce' aspects are implicated." ECF No. 9, p. 2. This is the entirety of Plaintiff's conclusory argument, and Plaintiff cites no authority in support of it.

In the context of the FAA, the Supreme Court has interpreted the term "involving commerce" as the functional equivalent of the more familiar term "affecting commerce"—words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power. *Allied-Bruce Terminix.*, 513 U.S. 265, 273-274 (1995). "Because the statute provides for the enforcement of arbitration agreements within the full reach of the Commerce Clause . . . the FAA encompasses a wider range of transactions than those actually 'in commerce.'" *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (cleaned up).

The transactions contemplated by the WCMSA, including the funding of the WCMSA, involve parties of different states. The WCMSA is a contract between Georgia-Pacific, Sedgewick CMS, and Plaintiff. ECF No. 6-1, p. 1. Georgia-Pacific is headquartered in Atlanta, Georgia, with

locations in more than thirty different states.  Sedgewick CMS is headquartered in Memphis, Tennessee, with offices throughout the United States.  Sedgewick CMS administers Plaintiff's Arkansas workers' compensation claim and other workers' compensation claims throughout the United States.  The WCMSA required Georgia-Pacific and Sedgewick CMS to fund the Medicare set-aside account, which includes an initial lump sum payment to the account and then annual payments by Georgia-Pacific and Sedgewick CMS through the remainder of Plaintiff's life.  ECF No. 6-1, p. 8.  Further, the WCMSA directed Plaintiff to deposit the settlement funds into the Medicare set-aside account and required this account to be an interest-bearing account at an FDIC insured banking institution.  ECF No. 6-1, ¶ 3.1.

Bearing in mind the broad interpretation of the term "involving commerce," the Court is convinced that the WCMSA, which contains the arbitration provision, evidences a transaction involving commerce within the meaning of the FAA.  Thus, the Court finds no merit in Plaintiff's conclusory assertion that because no interstate commerce aspects are implicated, the FAA does not apply.

Plaintiff also argues that, because the FAA does not apply, the arbitration provision must be governed by the Arkansas Uniform Arbitration Act ("UAA"), Ark. Code Ann. § 16-108-201, *et seq*.  First, the Court has rejected Plaintiff's argument that the FAA does not apply.  Second, the UAA applies to arbitration agreements made: (1) on or after July 27, 2011; and (2) before July 27, 2011, but only if all parties so agree "in a record."  Ark. Code Ann. § 16-108-203.  The WCMSA containing the agreement to arbitrate was entered into by the parties and approved by the Centers for Medicare and Medicaid Services before July 27, 2011, and there is no record that the parties agreed to have the UAA govern the WCMSA.  Third, Plaintiff has not demonstrated how the application of the UAA would change the outcome here.  Therefore, the Court rejects Plaintiff's

argument that the UAA controls.

In conclusion, the Court finds that the WCMSA's arbitration provision is enforceable under the FAA. Thus, Plaintiff should be compelled to arbitrate his dispute with Defendant in accordance with the arbitration provision.

### III.  CONCLUSION

For the reasons stated above, Defendant's Motion to Compel Arbitration and Stay Proceedings (ECF No. 6) is **GRANTED**.  The parties are directed to submit to arbitration in accordance with the terms of the arbitration provision in the WCMSA.  This case is hereby **STAYED** and **ADMINSTRATIVELY TERMINATED** pursuant to 9 U.S.C. § 3, without prejudice to the right of the parties to reopen the proceedings to enforce the arbitrator's decision.

**IT IS SO ORDERED**, this 31st day of March, 2022.

/s/ Susan O. Hickey
Susan O. Hickey
Chief United States District Judge